BARRACK, RODOS & BACINE
STEPHEN R. BASSER[*]
SAMUEL M. WARD[*]
402 West Broadway, Suite 850
San Diego, CA  92101
Telephone:  (619) 230-0800
Facsimile:   (619) 230-1874

ROSE LAW GROUP pc
Kathryn Honecker (AZ Bar No. 020849)
7144 E. Stetson Drive, Suite 300
Scottsdale, AZ 85251
khonecker@roselawgroup.com
docket@roselawgroup.com
Telephone:  (480) 505-3936
Facsimile:   (480) 505-3925

*Attorneys for Plaintiff*

[*]*Pro hac vice motions forthcoming*

*[Additional Counsel on Signature Page]*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Mark Schellenbach; William Ryder; on behalf of themselves and all others similarly situated,<br><br>                              Plaintiffs,<br><br>      v.<br><br>GoDaddy, Inc., a Delaware Corporation,<br><br>                              Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>(Violation of Arizona Consumer Fraud Act; Fraudulent Concealment; Negligent Misrepresentation; California False Advertising Law; and California Unfair Competition Law)<br><br>(JURY TRIAL DEMANDED) |

Plaintiffs Mark Schellenbach and William Ryder, by and through their undersigned attorneys, bring this action on behalf of themselves and all others similarly situated and allege the following, based upon personal knowledge as to themselves and, in all other respects, based on publically available information, the investigation of counsel, and information and belief.

## I.    INTRODUCTION

1.    This is a class action arising from Defendant GoDaddy, Inc.'s ("GoDaddy," "Defendant," or the "Company") misrepresentations regarding the nature, form and function of "Dedicated Server" hosting services provided by the Company.

2.    GoDaddy, which describes itself as "the world's largest technology provider dedicated to small businesses," sells a variety of internet services, including internet domain registration, provision of various web-based business applications, and various forms of server access, including "Cloud Servers," "Virtual Private Servers," and "Dedicated Servers."

3.    A server is a computer or computer program that manages access to a centralized resource such as a webpage.  A "Dedicated Server" is a server that is dedicated to one customer; the resources of that server are not shared or utilized by any other customer.  In contrast, a "Virtual Private Server," is a "virtual machine" that allows for several separate servers to run on, and share the resources of, one physical server.  Because Virtual Private Servers share server resources, one Virtual Private Server can be negatively impacted by the operation of another Virtual Private Server located on the same physical device.  Put more simply, a "Dedicated Server" is a single physical computer server dedicated to one customer while a Virtual Private Server is one of several software-based servers that are located on, and share the resources of a, single physical server.

4.    GoDaddy's "Dedicated Servers," which the Company asserts are "for clients who aren't big on sharing," are priced substantially higher than other hosting solutions

COMPLAINT
Case No.:

provided by GoDaddy.  However, GoDaddy's assertion that its "Dedicated Servers" are dedicated servers is, in fact, false.  In truth, the Company does not provide "Dedicated Servers" as represented.  Instead, GoDaddy is providing its "Dedicated Server" customers with virtualized private servers that may share the resources of a single physical server between multiple users.  As a result, GoDaddy customers, who pay a substantial premium for Dedicated Server subscriptions, are in reality getting a lesser "Virtual Private Server" product.

## II.    JURISDICTION AND VENUE

5.     This Court possesses original matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because:

    a.    The Plaintiffs are citizens of a different state than that of the Defendant.

    b.    The amount in controversy, exclusive of interest and costs, exceeds $5,000,000.

6.     Venue is proper in the District of Arizona pursuant to 28 U.S.C. § 1391(b) because GoDaddy is headquartered, and conducts substantial business, in the District of Arizona.

## III.    PARTIES

7.     GoDaddy, Inc. is an internet domain registrar and web hosting company. Incorporated in Delaware, GoDaddy maintains its corporate headquarters at 14455 North Hayden Road in Scottsdale, Arizona.  In addition, the Company's Global Technology Center is located nearby at 3266 East GoDaddy Way, Tempe, Arizona.

8.     Plaintiff Mark Schellenbach is a web site designer based in Los Angeles, California.  Beginning in December 2014 and continuing thereafter, Plaintiff Schellenbach, with Plaintiff William Ryder, purchased a "Dedicated Server" hosting plan maintained by Defendant.

COMPLAINT
Case No.:

9.     Plaintiff William Ryder is a web site designer based in Los Angeles, California. Beginning in December 2014 and continuing thereafter, Plaintiff Ryder, with Plaintiff Mark Schellenbach, purchased a "Dedicated Server" hosting plan maintained by Defendant.

## IV.    FACTUAL ALLEGATIONS

10.    A server is a physical device or computer program that manages a shared resource such as a web page. As the web-based economy has grown, so too has the market for server solutions. GoDaddy is one of the largest providers of server hosting in the United States, providing a wide variety of server hosting plans. GoDaddy's server hosting business is a significant driver of Company revenue. GoDaddy categorizes its revenue in three separate streams, "domains," "hosting and presence," and "business applications." Typically, more than one third of GoDaddy's revenue is derived from its "hosting and presence business." For example, in both calendar years 2014 and 2015, GoDaddy earned approximately 36%, or $507.9 million and $592 million respectively, in revenues derived from its hosting and presence business.

11.    GoDaddy, like many other web-based hosting services, provides three types of hosting services, cloud hosting, sometimes referred to as shared hosting, VPS hosting and Dedicated Servers.

12.    Cloud Hosting allows multiple users to share the resources of a single physical server. With cloud hosting, the resources of a physical server are allocated dynamically, *i.e.*, based on demand. As a result, the performance of one website on a shared host can be dramatically impacted by the amount of traffic being directed to other websites that share the resources of the physical server.

13.    Virtual Private Servers ("VPS") are software based servers that, like shared hosting, allow several clients to use the resources of the same physical server. Unlike shared hosting, in a VPS environment the resources of the physical server are allocated

COMPLAINT
Case No.:

among the VPSs that are hosted on the physical server.  In theory, this allows VPS users better performance and control than they would see in a shared hosting environment. Because each VPS is allotted only a portion of the resources of the physical server, costs associated with VPS hosting are generally significantly less expensive than are those associated with Dedicated Server hosting.

14.  Dedicated Servers are exactly that, one user has complete control and access to one physical server, the resources of that server are for the sole use of that user, thus the performance of that user's website is not dependent on, or negatively impacted by, any other user.



15.  These three types of server environments can be analogized to the differences between an apartment, a condominium and a house.  Shared hosts, like apartments, share the same, unallocated resources.  VPSs, like condos, share ownership of some specific common resources, and Dedicated Servers, like houses, are completely controlled by the owner.

16.  On October 31, 2014, GoDaddy issued a press release titled "GoDaddy Launches New Dedicated and VPS Servers with Added Support for Designers and Developers."  In the release, the Company announced that these new services would be offered through its "GoDaddy Pro" website, geared toward "tech-savvy developers and designers who need more detailed product information."

17.  GoDaddy represents that "[i]f you purchase a Dedicated Server, *an entire*

COMPLAINT
Case No.:

*server is reserved exclusively for your account and usage. You will have exclusive rights to your server's bandwidth, memory, and storage space, and your server's performance will not be affected by traffic and the usage patterns of other customers.*"

18.     On its website, GoDaddy highlights nature and use of a dedicated server, specifically noting that users have "exclusive rights" to the server and "(root) access":[1]

> WHAT IS A DEDICATED SERVER?
>
> Unlike normal hosting plans, which put many customers' accounts on a single server, a Dedicated Server is reserved exclusively for the account and usage of a single customer. This means that the Dedicated Server customer has exclusive rights to their server's bandwidth, memory, and storage space, and performance is not affected by traffic and the usage patterns of other customers.
>
> When you purchase a Dedicated Server, you are actually leasing a server box that is configured and set up according to your preferences, but remains at our data center. A Dedicated Server account provides you with a dedicated IP address and full control of server usage and software installation, with admin (root) access to the server.
>
> You can use a Dedicated Server for a wide variety of purposes, including gaming servers, database management, and traffic-intensive websites. Dedicated Servers are particularly useful for companies and individuals who run very-high-traffic websites or applications and who need the bandwidth, versatility, and consistent performance of a dedicated box.

19.     GoDaddy advertises its Dedicated Servers as being "for clients who aren't big on sharing."[2]  The Company provides details regarding the technical specifications of those servers, identifying the processor type and clockspeed, the available memory and the available hard disk space,[3] all of which reinforce that users who purchase Dedicated Server subscriptions are receiving just that, a computer server that it solely dedicated to their use.

---

[1] https://www.godaddy.com/help/what-is-a-dedicated-server-127, last visited on March 7, 2016
[2] https://www.godaddy.com/pro/dedicated-server, last visited on March 2, 2016.
[3] https://www.godaddy.com/pro/dedicated-server, last visited on March 2, 2016.

COMPLAINT
Case No.:

20.     GoDaddy sells a variety of Dedicated Server plans under various configurations and running either the Windows or LINUX operating system. These Dedicated Server Configurations are priced from $79.99 per month to as much as $379.99 per month.[4]

21.     GoDaddy's Virtual Private Servers are sold at a substantially lower price than it charges for Dedicated Server packages. GoDaddy's Virtual Private Servers are offered at prices that are consistently lower than those charged for Dedicated Servers, beginning at $24.99 per month based on a twelve month contract. However, as set forth below, users of GoDaddy's Dedicated Servers are not actually getting dedicated servers.

---

[4] GoDaddy's monthly costs reflect a substantial discount for new customers. For example, GoDaddy's lowest priced Dedicated Server plan initially costs $79.99 per month for a twelve month contract, paid in advance. However, that monthly cost jumps dramatically to $129.99 per month upon renewal.

COMPLAINT
Case No.:

**Plaintiffs Discover that Their "Dedicated Server" is Not Really Dedicated**

22.    After purchasing a Dedicated Server plan in December 2014, Plaintiffs began experiencing crippling performance issues relating to the server.  Initially, Plaintiffs upgraded the Dedicated Server package with GoDaddy, transitioning from a 2 Gigabyte ("GB") Dedicated Server running the Linux operating system, priced at $119.99 per month plus an additional $10 per month for managed support, to a 4 Gigabyte Dedicated Server, priced at $159.99 per month plus an additional $10 per month for managed support. However, this upgrade did not alleviate Plaintiffs' server-related performance issues.

23.    As a result of these recurring performance issues, Plaintiffs hired an independent server expert to diagnose and resolve the performance issues.  After analyzing Plaintiffs' server, this IT consultant determined that GoDaddy's so-called Dedicated Servers are running OpenVZ, a "container-based" virtualization program for Linux. OpenVZ allows a host, like GoDaddy, to create multiple Linux isolated operating system instances, also referred to as "containers," on a single physical server, *i.e.*, a shared VPS-style server.   Rather than providing a Dedicated Server to its "Dedicated Server" customers, GoDaddy is actually providing these customers with virtualized servers.  These virtualized servers, which operate as "instances" or "containers" on a single physical device, are subject to performance issues that more expensive Dedicated Servers are not. As with any virtual server environment, where multiple virtual servers operating in instances on one physical device, the operations of one instance can impact the speed of operations on other instances.  Thus, Plaintiffs, whose concerns over server performance led them to discover this deception, are paying more for server performance than they are actually receiving—in other words, GoDaddy is charging Plaintiffs for superior service while providing inferior service.

24.    When Plaintiffs provided GoDaddy Technical Support ("GoDaddy Support") with evidence that the Dedicated Server offered by the Company was, in fact, a virtualized server running OpenVZ, GoDaddy Support acknowledged that the instance in

which their server was operating was "virtualized."   In another communication with GoDaddy Support, GoDaddy Support denied Plaintiffs' request to run a specific root-level command because, as it explained, running such a command would "give information related to the entire virtual environment, including other containers that you would not be relevant [sic], nor secure information to give to you."  When asked to confirm that the Plaintiffs were being granted access to a Dedicated Server, GoDaddy Support acknowledged that Plaintiffs were being provided a "Virtualized Dedicated Server," as opposed to a "Dedicated Server," and that "the disk itself would be virtualized," thus "[i]t is not the same as our legacy dedicated servers that would run from a physical drive."

25.    Shortly after GoDaddy disclosed that Plaintiffs were not receiving the benefit of the Dedicated Server that they were paying for, Plaintiffs chose not to continue using GoDaddy for hosting services and moved to another hosting company.

## V.    CLASS ACTION ALLEGATIONS

26.    The claims of all members of the Class derive directly from a single course of conduct by GoDaddy.   GoDaddy has and continues to engage in uniform and standardized conduct toward the Class. GoDaddy does not differentiate, in degree of care or candor, its actions or inactions, or the content of its statements or omissions, among individual members of the Class. Accordingly, Plaintiffs bring this lawsuit as a class action on their own behalf and on behalf of all other persons similarly situated as members of the proposed Class pursuant to Fed. R. Civ. P. 23(a) and (b)(3) and/or (b)(2) and/or (c)(4). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

27.    Plaintiffs bring this action and seek to certify and maintain it as a class action under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure on their behalf and on behalf of the following Class and Subclass:

COMPLAINT
Case No.:

**The Nationwide Class (the "Class")**

All individuals or entities who purchased or subscribed to "Dedicated Server" services provided by GoDaddy from October 2014 to the present and received a "virtualized" server.

**The California Subclass**

All persons in the state of California who purchased or subscribed to "Dedicated Server" services provided by GoDaddy from October 2014 through the present and received a "Virtualized" server.

28.     The following persons are excluded from the Classes: Defendant; any affiliate, parent, or subsidiary of Defendant; any entity in which Defendant has a controlling interest; any officer, director, or employee of Defendant; any successor or assign of Defendant; counsel for Plaintiff or anyone employed by counsel for Plaintiff in this action and their immediate family; and any Judge to whom this case is assigned and his or her immediate family and staff.

29.     This action has been brought and may properly be maintained on behalf of the Classes proposed above under the criteria of Fed. R. Civ. P. Rule 23.

30.     **Numerosity**. This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1). Plaintiffs are informed and believe that thousands of individuals within the United States have purchased Dedicated Server services from Defendant. Individual joinder of all Class members is impracticable.

31.     Each of the Classes is ascertainable because its members can be readily identified using sales records, contracts, and other information kept by Defendant in the usual course of business and within their control. Plaintiffs anticipate providing appropriate notice to the Class, in compliance with Fed. R. Civ. P. 23(c)(1)(2)(A) and/or (B), to be approved by the Court after class certification, or pursuant to court order under Fed. R. Civ. P. 23(d).

32.     Existence and predominance of common questions. Common questions of

9

law and fact exist as to all members of the Class and predominate over questions affecting only individual members of the Class members as is required by Fed. R. Civ. P. 23(a)(2). These common questions include the following:

    a.    Whether GoDaddy engaged in the conduct alleged herein;

    b.    Whether GoDaddy falsely advertised, marketed, and sold Dedicated Server services;

    c.    Whether purchasers of GoDaddy's Dedicated Server services overpaid for those services;

    d.    Whether the Defendant violated Ariz. Rev. Stat. § 44-1522(A) by falsely describing its "Dedicated Server" services;

    e.    Whether the Defendant violated Ariz. Rev. Stat. § 44-1522(A) by failing to disclose or concealing material facts as described herein;

    f.    Whether Defendant is liable to the Class for damages and/or penalties, as a result of their own knowledge, conduct, action, or inaction, and if so, in what amount; and

    g.    Whether Plaintiffs and the other members of the Class are entitled to equitable relief, including but not limited to restitution or a preliminary and/or permanent injunction.

33.    **Typicality.** Plaintiffs' claims are typical of the claims of the Class as required by Fed. R. Civ. P. 23(a)(3), because, among other things, Plaintiffs purchased Dedicated Server services which were falsely described in the same manner as were all Dedicated Server services sold by Defendant.

34.    **Adequacy.** Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the members of the Class they seek to represent.  Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. The interests of the members of Class will be fairly and adequately protected by Plaintiffs and their

COMPLAINT
Case No.:

1  counsel.  As such, Plaintiffs meets the requirements of Fed. R. Civ. P. 23(a)(4).

2      35.    **Declaratory and Injunctive Relief.**  Fed. R. Civ. P. 23(b)(2): Defendant

3  has acted or refused to act on grounds generally applicable to Plaintiffs and the other

4  members of the Class, thereby making appropriate final injunctive relief and declaratory

5  relief, as described below, with respect to the Class as a whole.

6      36.    **Superiority.** The class action is superior to other available means for the

7  fair and efficient adjudication of this dispute. The injury suffered by each member of the

8  Class, while meaningful on an individual basis, is not of such magnitude as to make the

9  prosecution of individual actions against GoDaddy economically feasible. Even if

10  members of the Class themselves could afford such individualized litigation, the court

11  system could not. In addition to the burden and expense of managing many actions arising

12  from the design defect, individualized litigation presents a potential for inconsistent or

13  contradictory judgments. Individualized litigation increases the delay and expense to all

14  parties and the court system presented by the legal and factual issues of the case. By

15  contrast, the class action device presents far fewer management difficulties and provides

16  the benefits of single adjudication, economy of scale, and comprehensive supervision by

17  a single court.

18      37.    In the alternative, the Class may be certified because:

19          a.    the prosecution of separate actions by the individual members of

20  the Class would create a risk of inconsistent or varying adjudication with respect to

21  individual members of the Class;

22          b.    the prosecution of separate actions by individual members of the

23  Class would create varying standards of conduct required of the Defendant;

24          c.    the prosecution of separate actions by individual members of the

25  Class would create a risk of adjudications with respect to them which would, as a

26  practical matter, be dispositive of the interests of other members of the Class not parties

27  to the adjudications, or substantially impair or impede their ability to protect their

28

COMPLAINT
Case No.:

interests; and

        d.     GoDaddy has acted, or refused to act on, grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

## VI.    CAUSES OF ACTION

### COUNT I

### VIOLATIONS OF THE ARIZONA CONSUMER FRAUD ACT

### (ARIZ. REV. STAT. §§ 44-1521, *et seq.*)

38.    Plaintiffs incorporate by reference the allegations set forth above as if set forth fully herein.

39.    Plaintiffs bring this claim on behalf of themselves and the Class.

40.    Plaintiffs and GoDaddy are each "persons" as defined by Ariz. Rev. Stat. § 44-1521(6). The Server Hosting products are "merchandise" as defined by Ariz. Rev. Stat. § 44-1521(5).

41.    The Arizona Consumer Fraud Act proscribes "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby."

42.    By failing to disclose and actively concealing that the "Dedicated Servers" offered by GoDaddy were not actually dedicated servers, GoDaddy engaged, and continues to engage, in deceptive business practices prohibited by the Arizona Consumer Fraud Act, Ariz. Rev. Stat. § 44-1522(A), including (1) representing that Dedicated Servers have characteristics, uses, benefits, and qualities which they do not have, (2) representing that Dedicated Servers are of a particular standard, quality, and grade when

they are not, (3) advertising Dedicated Servers with the intent not to sell them as advertised, and (4) engaging in acts or practices which are otherwise unfair, misleading, false, or deceptive to the consumer.

43.     As alleged above, GoDaddy made numerous material statements about the benefits and characteristics of the Dedicated Servers that were either false or misleading. Each of these statements contributed to the deceptive context of GoDaddy's unlawful advertising and representations as a whole.

44.     GoDaddy knew that the Dedicated Servers that it offered to the public were, in fact, virtualized servers and thus were not suitable for their intended use.  GoDaddy nevertheless failed to warn Plaintiff about these facts despite having a duty to do so.

45.     GoDaddy owed Plaintiffs a duty to disclose the defective nature of the Dedicated Servers because GoDaddy**:**

      a)    Possessed exclusive knowledge of the form and function of the products that it was marketing as Dedicated Servers;

      b)    Intentionally concealed the fact that the Dedicated Servers were, in fact, virtualized servers through its deceptive marketing campaigns; and/or

      c)    Made incomplete representations and/or omissions about the characteristics and performance of the Dedicated Servers generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

46.     GoDaddy's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true performance and characteristics of the Dedicated Servers.

47.     As a result of its violations of the Arizona Consumer Fraud Act detailed above, GoDaddy caused actual damage to Plaintiffs and, if not stopped, will continue to harm members of the Class.

13

COMPLAINT
Case No.:

48.     Plaintiffs and the other members of the Class sustained damages as a result of GoDaddy's unlawful acts and are, therefore, entitled to damages and other relief as provided under the Arizona Consumer Fraud Act.

49.     Plaintiffs also seek punitive damages as provided under the Arizona Consumer Fraud Act.

**COUNT II**

**FRAUDULENT CONCEALMENT**

**(On Behalf of the Class)**

50.     Plaintiffs incorporate by reference the allegations set forth above as if set forth fully herein.

51.     Plaintiffs bring this claim on behalf of themselves and the Class. GoDaddy intentionally concealed that the Dedicated Server services it offered were not, in fact dedicated servers, or acted with reckless disregard for the truth, and denied Plaintiffs and the other members of Class information that is highly relevant to their purchasing decision.

52.     GoDaddy further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including representations on its website, that the Dedicated Servers were reserved for the sole and specific use of the end customer.

53.     GoDaddy knew these representations were false when made.

54.     GoDaddy had a duty to disclose that these Dedicated Server services did not, in fact provide dedicated servers. Plaintiffs and the other members of the Class relied on Defendant's material representations regarding the nature and function of its Dedicated Server services.

55.     Plaintiffs and other class members were ignorant of the truth that GoDaddy was not providing Dedicated Servers.

56.     The aforementioned concealment was material because, had it been disclosed, Plaintiffs and the other members of the Class would not have bought the Dedicated Server services, or would not have bought those Dedicated Server services at

COMPLAINT
Case No.:

1    the prices they paid.

2        57.    The aforementioned representations were material because they were facts

3    that would typically be relied on by a person purchasing or leasing a server.

4        58.    Defendant intentionally made the false statements in order to sell Dedicated

5    Server services.

6        59.    Plaintiffs and the other members of the Class relied on GoDaddy's reputation

7    – along with GoDaddy's failure to disclose that its Dedicated Servers were not, as

8    represented to Plaintiff and the Class, actually dedicated servers.  Plaintiffs and the other

9    members of the Class also relied on GoDaddy's affirmative assurance regarding the

10   nature, form and function of its Dedicated Server services in making their decisions to

11   purchase those services.

12       60.    As a result of their reliance, Plaintiffs and the other members of the Class

13   have been injured in an amount to be proven at trial, including, but not limited to, their

14   lost benefit of the bargain and overpayment at the time of purchase of the Dedicated Server

15   services.

16       61.    GoDaddy's conduct was knowing, intentional, with malice, demonstrated a

17   complete lack of care, and was in reckless disregard for the rights of Plaintiffs and the

18   other members of the Class.  Plaintiffs and the other members of the Class are therefore

19   entitled to an award of punitive damages to the extent permitted under applicable law.

20

21                            **COUNT III**

22               **NEGLIGENT MISREPRESENTATION**

23              **(On Behalf of the California Class)**

24       62.    Plaintiffs incorporate by reference the allegations set forth above as if set

25   forth fully herein.

26       63.    Plaintiffs bring this claim on behalf of themselves and the Class.

27       64.    Defendant had a duty to provide honest and accurate information to

28                                15

COMPLAINT
Case No.:

customers so that customers could make informed decisions regarding the purchase of Dedicated Server services.

65.     Defendant had exclusive, or at least superior, knowledge of the material fact that its "Dedicated Server" was actually a "Virtual Dedicated Server," which was unknown to Plaintiffs and the other members of the Class, as set forth in detail above.

66.     Defendant specifically and expressly misrepresented material facts to Plaintiffs and the other members of the Class, as set forth in detail above.

67.     Defendant made partial representations that it was offering a "Dedicated Server," but suppressed the material fact that it was actually offering a "Virtual Dedicated Server," as detailed above.

68.     Defendant knew, or in the exercise of reasonable diligence should have known, that consumers would be misled by these misrepresentations.

69.     Plaintiffs and the other members of the Class justifiably relied on Defendant's misrepresentations and have been damaged thereby.  GoDaddy knew that each of its statements or suggestions that its offering of a "Dedicated Server" was inconsistent with the industry's understood meaning that a "Dedicated Server" allowed one user complete control and access to one physical server, with the resources of that server being for that user's sole use, thus the performance of that user's website is not dependent on, or negatively impacted by, any other user.

70.     GoDaddy actively and intentionally concealed and/or suppressed this material fact, in whole or in part, with the intent to deceive and induce Plaintiffs and the Class Members to pay from $79.99 to $379.99 per month for a "Dedicated Server."

71.     GoDaddy failed to exercise reasonable care in communicating to Plaintiffs and the Class Members that the advertised "Dedicated Server" was actually a "Virtual Dedicated Server" that did not provide the customer with the same advantages expected of a Dedicated Server, as detailed above.

72.     Plaintiffs and the Class justifiably relied on GoDaddy's false representation

16

1   of its Dedicated Server in selecting their level of service.

2      73.   Plaintiffs and the Class paid the increased monthly service charge for

3   "Dedicated Server."

4      74.   Plaintiffs and the Class were unaware of the omitted material facts and

5   would not have acted as they did if they had known of the concealed and/or suppressed

6   facts.  Had they known the truth, they would not have paid the substantial higher price for

7   Go Daddy's "Virtual Dedicated Server" or would have obtained a true Dedicated Server

8   from someone other than GoDaddy.

9      75.   By reason of the foregoing, GoDaddy's concealment and/or suppression of

10  facts proximately caused Plaintiffs and Class Members to sustain damages in an amount

11  to be determined at trial.

**COUNT IV**

**VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW**

**(California Business & Professions Code §§ 17500, *et seq.*)**

**(On Behalf of the California Subclass)**

76.   Plaintiffs incorporate by reference the allegations set forth above as if set forth fully herein.

77.   Plaintiffs bring this claim on behalf of themselves and on behalf of the members of the California Subclass.

78.   Cal. Bus. & Prof. Code § 17500 provides**:**

> It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise,. . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated … from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . . which is untrue or misleading, and which is

17

COMPLAINT
Case No.:

known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

79.     Defendant caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, including statements included in its Hosting Agreement and on its website asserting that it was offering "Dedicated Servers." Defendant also caused to be made or disseminated through California and the United States, through its Hosting Agreement, the misrepresentation that its Dedicated Servers are "reserved exclusively for your account and usage."  These statements were known, or which by the exercise of reasonable care should have been known, to Defendant to be untrue and misleading to consumers, including Plaintiffs and the other members of the California Subclass.

80.     Defendant has violated Cal. Bus. & Prof. Code § 17500 because its misrepresentations and omissions regarding its Dedicated Servers were material and likely to deceive a reasonable consumer.

81.     Plaintiffs and the other members of the California Subclass have suffered an injury in fact, including the loss of money or property, as a result of Defendant's unfair, unlawful, and/or deceptive practices. In purchasing Dedicated Server services from Defendant, Plaintiffs and the other members of the California Subclass relied on the misrepresentations and/or omissions of Defendant with respect to the functionality and nature of the Dedicated Servers. Defendant's representations were not to be true because the Dedicated Servers are not, in fact, dedicated servers. Had Plaintiffs and the other members of the California Subclass known this, they would not have purchased the Dedicated Server services and/or paid as much for them. Accordingly, Plaintiffs and other members of the California Subclass overpaid for their Dedicated Server services and did not receive the benefit of their bargain.

82.     All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the state of

California and nationwide.

83.    Plaintiffs, individually and on behalf of the other members of the California Subclass, request that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and the other members of the California Subclass any money Defendant acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

## COUNT V

## VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW

### (California Business & Professions Code §§ 17200, *et seq.*)

### (On Behalf of the California Subclass)

84.    Plaintiffs incorporate by reference the allegations set forth above as if set forth fully herein.

85.    Plaintiffs bring this claim on behalf of themselves and on behalf of the members of the California Subclass.

86.    California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, defines unfair business competition to include any "unfair," "unlawful," or "fraudulent" business act or practice. The Act also provides for injunctive relief, restitution, and disgorgement of profits for violations.

87.    Defendant's unlawful, unfair, and fraudulent business acts and practices, as described herein, were and are in violation of the UCL. Defendant's conduct violates the UCL in the following ways:

    a)    By knowingly and intentionally concealing from Plaintiff and the other members of the California Subclass that the Dedicated Servers offered by Defendant were not, in fact dedicated servers;

    b)    By marketing the Dedicated Servers as "reserved exclusively for your account and usage" and by asserting that "[y]ou will have

19

exclusive rights to your server's bandwidth, memory, and storage space, and your server's performance will not be affected by traffic and the usage patterns of other customers;" and

c) By violating other California laws, including Cal. Bus. & Prof. Code § 17500.

88. Defendant's misrepresentations and omissions alleged herein caused Plaintiffs and the other members of the California Subclass to make their purchases or leases of Dedicated Servers. Absent those misrepresentations and omissions, Plaintiffs and the other members of the California Subclass would not have purchased these Dedicated Servers, would not have purchased these Dedicated Servers at the prices they paid, and/or would have purchased alternative dedicated servers from other sources.

89. Defendant's practice is also immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweigh its benefits.

90. Accordingly, Plaintiffs and the members of the California Subclass have suffered injury in fact, including lost money or property as a result of Defendant's actions, misrepresentations, and omissions.

91. Plaintiffs seek to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Defendant, under Cal. Bus. & Prof. Code § 17200.

92. Plaintiffs request that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and members of the California Subclass any money Defendant acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Civ. Code § 3345; and for such other relief set forth below.

## VII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class pray for judgment as follows:

1. For an order certifying this action as a class action;

20

2.    For an order appointing Plaintiffs as  representatives of the Class and their counsel of record as Class counsel;

3.    For an award of damages pursuant to the Arizona Consumer Fraud Act;

4.    For an award of actual, general, special, incidental, statutory, compensatory and consequential damages in an amount to be proven at trial;

5.    For an award of exemplary and punitive damages in an amount to be proven at trial;

6.    For an order requiring Defendants to disgorge, restore, and return all monies wrongfully obtained together with interest calculated at the maximum legal rate;

7.    For an order enjoining the wrongful conduct alleged herein;

8.    For costs;

9.    For interest;

10.    For attorneys' fees under applicable law; and

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

11.    For such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial for all claims so triable.

21

COMPLAINT
Case No.:

DATED:  March 18, 2016

**ROSE LAW GROUP, PC**

*/s/ Kathryn Honecker*

KATHRYN HONECKER

7144 East Stetson Drive, Suite 300
Scottsdale, AZ 85251
Telephone:  (480) 505-3936

**BARRACK, RODOS & BACINE**
Stephen R. Basser
Samuel M. Ward
600 West Broadway, Suite 900
San Diego, CA  92101
Telephone:  (619) 230-0800

**EMERSON SCOTT, LLP**
John G. Emerson
830 Apollo Lane
Houston, TX 77058
Telephone: (281) 488-8854
Facsimile:  (281) 488-8867
Email:  jemerson@emersonfirm.com

**EMERSON SCOTT, LLP**
David G. Scott
1301 Scott Street
Little Rock, AR 72202
Telephone: (501) 907-2555
Facsimile:  (501) 907-2556
Email:  dscott@emersonfirm.com

**JOHNSON VINES PLLC**
Christopher D. Jennings
2226 Cottondale Lane, Suite 210
Little Rock, AR 72202
Telephone: (501) 372-1300
Facsimile:  (888) 505-0909
Email:  cjennings@johnsonvines.com

Attorneys for Plaintiffs

22

COMPLAINT
Case No.: